**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 16, 2013

No. 12-40848

Lyle W. Cayce
Clerk

UNION OIL COMPANY OF CALIFORNIA,

Plaintiff - Appellee Cross-Appellant

v.

BUFFALO MARINE SERVICES, INCORPORATED,

Defendant - Appellant Cross-Appellee

Appeals from the United States District Court
for the Eastern District of Texas
1:10-CV-195

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

PER CURIAM:[*]

This case arises out of an August 2004 oil spill that caused various damages to a nearby marine terminal run by Union Oil Company of California ("Unocal"). As the responsible party, Buffalo Marine Services, Inc. ("Buffalo") stipulated to liability and settled most of Unocal's claims for damages, but the parties proceeded to a bench trial to determine the quantum of Unocal's lost profits attributable to the spill. On appeal, both parties contend that the district court erred in calculating that amount. Unocal also challenges the court's

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40848

decision to deny pre-judgment interest on the damages award for the 20-month period in which it failed diligently to pursue its claims. Finally, Buffalo challenges the court's decision, under Federal Rule of Evidence 408, to exclude from evidence the National Pollution Fund Center's ("NPFC") claim determination. We affirm in all respects.

To calculate damages for lost profits, the district court began by selecting, as a representative sample, the three months on either side of August 2004—the month of the spill. It then calculated the average number of barrels of oil that Unocal's terminal received monthly during these two periods, then subtracted from that figure the number of barrels actually received that August. Finally, the court multiplied that shortfall by the average profit that Unocal realized on each barrel of oil received.

The court did not err in applying this methodology. Contrary to Buffalo's assertion, the "reasonable certainty"[1] with which Unocal was required to prove lost profits did not require it to identify lost opportunities from specific vessels that would have visited the terminal but for its closure following the spill.[2] Considering figures from adjacent months was more than adequate.[3] And,

---

[1] "Reasonable certainty" is the legal standard regardless of the body of law that we apply. *See Tex. Instruments v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994) (discussing "reasonable certainty" standard under Texas law); *Orduna S.A. v. Zen-Noh Grain Corp.*, 913 F.2d 1149, 1155 (5th Cir. 1990) (discussing flexibility in the "reasonable certainty" standard in the general maritime law); RESTATEMENT (SECOND) OF TORTS § 912.

[2] *Cf. In re M/V Nicole Trahan*, 10 F.3d 1190, 1194-95 (5th Cir. 1994) (refusing to require a vessel to prove lost profits by showing "a specific lost opportunity"); *Delta S.S. Lines, Inc. v. Avondale Shipyards, Inc.*, 747 F.2d 995, 1001 (5th Cir. 1984) (explaining why requiring a vessel owner to prove that specific cargos were not carried because of the casualty would be "unsound"); *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, 454 F.3d 1203, 1218 (11th Cir. 2006) (concluding that the defendant-appellant was "simply wrong in its unsupported assertion that lost profits must be attributable to the loss of specific customers").

[3] *See, e.g., Gen. Facilities, Inc. v. Nat'l Marine Serv., Inc.*, 664 F.2d 672, 674-75 (8th Cir. 1981) (affirming district court's lost profit damages award discovered using methodology virtually identical to that used in the instant case).

No. 12-40848

despite Unocal's protestations, the court correctly declined to project a banner August for Unocal based on supposed seasonal trends that find no support in the actual numbers. The court's projection of profits for that August was neither penurious nor extravagant; it was realistic in light of objective data depicting the terminal's actual business volumes in the months bracketing the month of the spill.

Neither did the district court clearly err in finding that Unocal unduly delayed the prosecution of its claims or abuse its discretion in concluding, based on this delay, that the interests of justice demanded that pre-judgment interest not accrue during such period.[4] The court gave Unocal ample opportunity to explain its lengthy silence following its rejection of the claims adjuster's offer, but Unocal never offered such an explanation.

Finally, the district court did not abuse its discretion in excluding from evidence, under Federal Rule of Evidence 408, the NPFC's determination of the amount of Unocal's lost profits: Rule 408 renders settlement offers inadmissible for proving or disproving liability or the amount of damages.[5] Buffalo could not offer the NPFC's claim determination as evidence of the appropriate methodology for quantifying damages because selection of the proper methodology was the primary issue in the case: The final amount of damages would flow directly from that determination. Neither was the NPFC's determination admissible (1) to show the "shifting nature" of Unocal's claim before the NPFC—the relevancy of which Buffalo does not explain—or (2) to

---

[4] *See* 33 U.S.C. § 2705(b)(3).

[5] *See* FED. R. EVID. 408(a); *Smith Prop. Holdings v. United States*, 311 F. Supp. 2d 69, 83 (D.D.C. 2004) (reasoning that NPFC claim determinations are settlement offers and thus inadmissible to show liability or damages). Unocal does not contend on appeal that the claim determination was not a settlement offer within the intendment of Rule 408—only that it was proffered for "another purpose" and therefore was admissible under 408(b)'s exception.

No. 12-40848

support Buffalo's estoppel argument, which, as earlier stipulated, it could not raise.

AFFIRMED.